FILED
05/21/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2020 Session

## TENNESSEE STATE BANK v. DOUGLAS V. MASHEK ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 182407-3    Michael W. Moyers, Chancellor**

_____

**No. E2019-00591-COA-R3-CV**

_____

This case involves a home equity line of credit ("HELOC") extended to the co-defendant, Douglas V. Mashek, by the plaintiff, Tennessee State Bank ("the Bank"), via a promissory note secured by a deed of trust encumbering real property titled to Mr. Mashek and acquired during Mr. Mashek's marriage to the co-defendant, Deborah A. Mashek.  When the Bank subsequently attempted to foreclose on the property, Mr. Mashek objected based on alterations to the deed of trust and a notice of right of rescission that had allegedly occurred after the deed's execution and prior to recordation. The Bank filed a complaint against the Masheks in the trial court, seeking declaratory judgment that the recorded deed of trust was valid and enforceable, or in the alternative, reformation of the executed deed of trust to conform to the recorded deed.  The Bank also named the title company involved in the loan transaction as a third-party defendant, alleging the title company's liability in the event that the trial court found the deed of trust, either as executed or as recorded, to be unenforceable.[1]  The Masheks, proceeding *pro se*, filed various pleadings in response to the complaint, including a counterclaim against the Bank, alleging, *inter alia*, common law fraud, breach of fiduciary duty, negligence, equitable estoppel, slander of title, statutory estoppel, wrongful foreclosure, and unclean hands.  Upon the Bank's motion for partial summary judgment and following a hearing, the trial court granted the motion as to reformation of the executed deed of trust, declaring the deed, as reformed, to be enforceable and finding that the Bank was entitled to pursue foreclosure proceedings.  The trial court found in part that the Bank or its agent(s) had employed "procedurally questionable and perhaps fraudulent" methods that were "at the very least negligent and potentially criminal in nature" to correct mistakes in the executed deed of trust and to, without authorization, affix the Masheks' initials over a change in a date of signature on the notice of right of rescission. However, having also found that the mistakes corrected were mutual and amounted to scrivener's errors that were not intended to and did not prejudice the Masheks, the trial court granted the Bank's request to reform the executed deed of trust.  The trial court

_____
[1] The title company is not participating in this appeal.

awarded to the Bank a monetary judgment against Mr. Mashek, as the sole debtor named in the loan documents, in the amount of $294,566.39 for unpaid principal and interest. The trial court also awarded to the Bank reasonable attorney's fees and expenses in the amount of $8,795.84, limiting such fees to those that "would be expected in an ordinary foreclosure action." The trial court dismissed the Masheks' various counterclaims and subsequently denied the Bank's motion to alter or amend language in the judgment. The Masheks have appealed, and the Bank has raised issues regarding the trial court's denial of its request to alter the court's findings and denial of its request for additional attorney's fees and expenses. Having determined that the Bank or its agent(s) made a unilateral mistake in materially altering the deed of trust after the document's execution and then recording the altered deed of trust with the unilateral mistake incorporated, we reverse the trial court's judgment as to the reformation and enforceability of the executed deed of trust. Having also determined that the action of the Bank or its agent(s) in affixing the Masheks' initials over the altered date on the rescission notice without authorization or notice constituted gross negligence, we reverse the trial court's finding that no gross negligence occurred but affirm the trial court's implied finding that the Bank could not succeed in its request to reform the effective date of the rescission notice. However, concluding that no alterations were made to the promissory note, we further determine that the trial court properly found Mr. Mashek to be liable for the unpaid principal and interest due under the terms of the note. We therefore affirm the trial court's $294,566.39 monetary judgment against Mr. Mashek. We vacate the trial court's award of attorney's fees and expenses to the Bank and remand for a hearing to determine the amount of attorney's fees and expenses incurred by the Bank solely to obtain a judgment based on the promissory note. We affirm the trial court's judgment in all other respects, including its denial of the Bank's request for additional attorney's fees and expenses and its denial of the Bank's motion to alter or amend the language of the judgment. Finally, we clarify that no evidence has been presented in this case to support a finding of the intent necessary for forgery as a cause of action against the Bank or its agent(s).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Douglas Vernon Mashek and Deborah A. Mashek, Powell, Tennessee, Pro Se.

W. Morris Kizer, Knoxville, Tennessee, for the appellee, Tennessee State Bank.

2

**OPINION**

I. Factual and Procedural Background

The initial transaction giving rise to this action occurred in December 2003 when Mr. Mashek obtained a HELOC from the Bank via a promissory note ("the Note") that was secured by a deed of trust encumbering real property located at 1116 Irwin Road in Powell, Tennessee ("the Property"). The trial court, in its July 2017 Memorandum Opinion and Order, summarized the essentially undisputed facts leading to the initiation of this lawsuit as follows:

Pursuant to this [HELOC] transaction, Mr. Mashek executed several documents, including a Promissory Note, a Deed of Trust (wherein his property at 1116 Irwin Road was pledged as security for any indebtedness arising pursuant to the Note,) a Notice of Right of Rescission, and a Sweep Authorization Form. Mrs. Mashek executed the Deed of Trust, with the proviso that she was not obligated on the debt and was only conveying any interest she might have in the property. The documents were fully executed by December 22, 2003, Mrs. Mashek having signed the necessary documents at the couple['s] then residence in Minnesota. Sometime after, Mr. Mashek began making draws on the HELOC.

In 2005 or 2006, according to Mr. Mashek's recollection, when the balance owed on the HELOC was zero or close to zero, he contacted [the Bank] to close the line of credit, and was informed that there would be a charge for this service. This charge was called for in the Promissory Note under the Paragraph entitled "Additional Charges." Faced with paying this fee, Mr. Mashek decided to leave the line of credit open. Following this conversation, Mr. Mashek began making additional draws against the line of credit.

In 2011, Mr. Mashek, who had apparently fallen behind on repayments of the loan, was contacted by a representative of [the Bank]. During this conversation Mr. Mashek asked to see a copy of the original loan documentation and was refused, the representative asserting that [Mr. Mashek] had the original copies. Sometime after that conversation, Mr. Mashek failed or refused to make any additional repayments of the loan. In 2012, [the Bank] attempted to foreclose on the property, and was at [that] point notified by Mr. Mashek that the documents which he had signed in 2003 had been altered, and that he objected to the foreclosure sale based on those alterations.

3

Although [the Bank] in its original complaint asserted that a copy of the Deed of Trust securing the debt of Douglas Mashek was a "true and correct copy of the Deed of Trust that was signed by Mr. and Mrs. Mashek at the closing," it seems certain now and is not seriously disputed by [the Bank] that at some time after the closing, the Deed of Trust and other documents relative to the loan were in fact altered. The original Deed of Trust, included at various places in the record, most recently as an exhibit in response to the pending Motion, reflects that the Deed was executed to secure the obligations of "Breaking Bread, Inc.[,"] an entity that the Masheks had never heard of nor had any interest in. Additionally, the Notary seal indicates that the documents were executed in Knox County, Tennessee, when in fact they had been executed in Minnesota and notarized by a Minnesota Notary. Further, it appears that the Notice of Right of Rescission was also altered to change the date of notice from December 22, 20[03] to December 15, 200[3],[2] with an apparently fraudulent acknowledgment in the form of forged initials made over the handwritten correction. Finally, the box that indicates the Deed of Trust is an "Open Ended Mortgage as defined by Chapter 137, 1987 Public Acts of Tennessee" is checked on the documents executed by the Masheks, but absent on the documents actually filed with the Knox County Register of Deeds Office.

(Internal citations to record omitted.)

The Bank initiated this action by filing a complaint in the trial court on March 8, 2012, naming as defendants the Masheks and Stewart Title Company d/b/a Abstract Title ("Stewart Title"). The Bank sought declaratory judgment that the deed of trust recorded with the Knox County Register of Deeds on January 16, 2004 ("Recorded Deed of Trust"), was valid and enforceable and that the Bank could "proceed with the exercise of its remedies under the Deed of Trust." In the alternative, the Bank requested that the trial court "reform the Deed of Trust to correct the identity of the borrower listed therein as Douglas V. Mashek, with such correction of the name of the borrower to relate back by a nunc pro tunc order to the date of execution of the Deed of Trust, December 15, 2003," allowing the Bank to then proceed with its exercise of remedies.

The Bank also sought a monetary judgment for the principal purportedly owed on the HELOC by Mr. Mashek of $234,079.32 plus interest, costs, and fees, as well as

---

[2] At this point in its order, the trial court inadvertently stated these dates concerning the notice of right of rescission as occurring in 2005 and 2015, respectively. The court correctly stated these dates later in the order as occurring in 2003.

reasonable attorney's fees and litigation expenses. In a subsequent amendment to the complaint, the Bank requested that if the trial court were to find that "the Deed of Trust was materially altered after it was signed by Mr. Mashek and Mrs. Mashek and should not be reformed or corrected," that the trial court would "impose an equitable lien on the Property" and direct that "the Property be sold with the proceeds applied to the payment of the Note."

The Bank attached to its complaint the following exhibits: (A) a copy of the Note in the principal amount of $224,000.00, dated December 15, 2003, and signed by Mr. Mashek and a vice president of the Bank, Tim Tassell; (B) the Recorded Deed of Trust, Instrument No. 200401160070275, dated as executed on December 15, 2003, securing the obligations of Mr. Mashek and otherwise reflecting what the trial court ultimately found to be alterations in the original document; and (C) a copy of the first page of the deed of trust that Mr. Mashek had delivered to the successor trustee on February 2, 2012, also dated as executed on December 15, 2003, but purporting to secure the obligations of "Breaking Bread, Inc." and including a checkmark to indicate an "Open-End Mortgage" where no such checkmark exists on the Recorded Deed of Trust. At the time of the complaint's filing, the Bank asserted that its "Exhibit B," the Recorded Deed of Trust, was "a true and correct copy of the Deed of Trust that was signed by Mr. Mashek and Ms. Mashek at the Closing."

As to Stewart Title, the Bank asserted in its complaint that Stewart Title, a Texas corporation qualified to do business in Tennessee, was the successor by merger with Abstract Title and was liable for the actions of Abstract Title related to this transaction. According to the Bank, it had retained Abstract Title to "prepare the Deed of Trust, close the Loan, record the Deed of Trust, and provide copies of the closing documents, including the Deed of Trust, to Mr. Mashek and Mrs. Mashek after the closing of the Loan." The Bank thereby requested that if the trial court were to find the deed of trust to be unenforceable, it should also find Stewart Title liable to the Bank "for all damages it has sustained due to the negligence and/or reckless conduct of Abstract Title in connection with its preparation of the Deed of Trust." Stewart Title subsequently filed a motion to dismiss based on the applicable statute of limitations. The Bank then filed a motion to amend its complaint to, *inter alia*, add an averment that it had not learned of Mr. Mashek's claim that the Recorded Deed of Trust was unenforceable until February 2, 2012, when Mr. Mashek had delivered what he asserted was a copy of the original deed of trust to the successor trustee.

As to the Masheks' response to the Bank's complaint, they filed a motion for enlargement of time to file an answer on March 23, 2012. Following an agreed order entered by the trial court on April 25, 2012, granting the Masheks' request for additional time, the Masheks filed a "Verified Motion to Dismiss/Strike/Demand for More Definite

Statement" on May 9, 2012, along with a document entitled "Judicial Notice/Cognizance with Claim of Rights in the Form of an Affidavit," the next day; two letters with the trial court near the end of May 2012; and an amended verified motion to dismiss/strike/demand in June 2012. In the original and amended versions of their motion, the Masheks asserted, *inter alia*, that the trial court lacked subject matter jurisdiction over this action "due to statutory/felony violations committed by [the Bank] and/or its agent."

The Masheks attached to their original motion to dismiss/strike/demand an affidavit and report completed by Larry S. Miller, Ph.D., a forensic document examiner certified by the national Forensic Specialties Accreditation Board according to his curriculum vitae, which was also attached. In his report, Dr. Miller opined, upon his examination of the documents at issue, that "[t]he face page of [the deed of trust in Mr. Mashek's possession] [had] been replaced with the face page of [the Recorded Deed of Trust]." Dr. Smith also opined that the initials, "*DM*," appearing both above and below the signature date of December 15, 2003, on the notice of right of rescission ("Rescission Notice") in the Bank's possession "were not authored (penned) by Douglas V. Mashek nor Deborah A. Mashek" and that both sets of "*DM*" initials on that document "were probably made by one, yet identified, individual." To their amended motion, the Masheks attached an affidavit executed by Mr. Mashek, setting forth a copy of the Bank's November 4, 2011 response to Mr. Mashek's qualified written request for information related to his loan.

The Bank filed an objection to the consideration of the affidavits filed by the Masheks, arguing that insofar as the Masheks' motion was one to dismiss the action, it appeared to be based on an alleged failure to state a claim upon which relief could be granted, pursuant to Tennessee Rule of Civil Procedure 12.02(6), and that in order for matters outside the pleadings to be considered, the trial court would have to convert the Masheks' motion to one for summary judgment. The Masheks filed an answer to this objection, reasserting that their motion to dismiss was based on an alleged lack of subject matter jurisdiction pursuant to Tennessee Rule of Civil Procedure 12.02(1).

Following a hearing, the trial court entered an order on August 27, 2012, denying the Masheks' amended motion to dismiss/strike/demand upon finding that the motion was "not well taken." In a subsequent order entered on September 12, 2012, the trial court denied a motion filed by the Masheks that the trial court treated as a motion to reconsider their amended motion to dismiss/strike/demand. The trial court then denied a third motion to dismiss filed by the Masheks in an order entered on October 11, 2012.

Meanwhile, in its August 27, 2012 order, the trial court granted the Bank's motion to amend its complaint and dismissed Stewart Title's motion to dismiss. On September

5, 2012, Stewart Title filed an answer in response to the amended complaint, denying any allegation that its predecessor, Abstract Title, had altered the first page of the deed of trust and asserting several affirmative defenses. Ms. Mashek ultimately filed an "Answer, Preliminary Statement and Defenses" on December 3, 2012, stating that she was "without knowledge" of all facts averred in the Bank's complaint and that the Bank had failed to state a claim upon which relief could be granted against her individually.

On January 14, 2013, the Bank filed a motion for default judgment against Mr. Mashek, who responded by filing, *inter alia*, a "Belated Verified Answer" and a "Verified Counterclaim," with multiple exhibits attached, on January 22, 2013. In his counterclaim, Mr. Mashek asserted that he was seeking a declaration to quiet title, arguing that the Recorded Deed of Trust was void due to the Bank's actions. He sought an order "voiding" the Recorded Deed of Trust and "damages for the tort[ious] and wrongful conduct" of the Bank. Mr. Mashek further alleged in his counterclaim that due to an act of criminal forgery, the Bank "lacks standing to foreclose in that they have no present legal right to enforce the security agreement that underlies the foreclosure action." Also in his counterclaim, Mr. Mashek asserted "causes of action" against the Bank of common law fraud, breach of fiduciary duty, negligence, equitable estoppel, slander of title, statutory estoppel, wrongful foreclosure, and unclean hands.

Among the exhibits attached to Mr. Mashek's counterclaim was a copy of the deed of trust he claimed to have executed and then been sent a copy of by Abstract Title, the first page of which had been the "Exhibit C" to the Bank's complaint ("Executed Deed of Trust"). In his answer, Mr. Mashek did not deny having executed a deed of trust with the Bank in December 2003 or having drawn money on the line of credit. Mr. Mashek did deny, however, that he owed any monetary obligation to the Bank predicated on what he claimed to be the unenforceability of the Recorded Deed of Trust.

In a reply to the counterclaim, filed March 1, 2013, the Bank acknowledged the discrepancies between the Recorded Deed of Trust and the Executed Deed of Trust but denied all substantive allegations as to how the discrepancies occurred and maintained that the Recorded Deed of Trust was enforceable. The Bank asserted that "if the deed of trust and the notice of rescission were altered, such alterations were done by Stewart Title Company [d/b/a] Abstract Title . . . ." Following the filing of these pleadings, Mr. Mashek filed notices of having served discovery requests on Stewart Title and the Bank in May 2013, and Stewart Title filed a notice of having responded to Mr. Mashek's discovery requests.

The next pleading filed in this matter was a motion for continuance filed by Mr. Mashek on May 20, 2016, in which he referenced having received notice that the trial was set for June 1, 2016. Mr. Mashek then filed a motion to compel discovery from the

Bank on May 31, 2016. On January 10, 2017, the Bank filed a motion to set the case for hearing. Mr. Mashek again filed multiple documents concerning discovery, including a second motion to compel wherein he asserted that the Bank's responses to his interrogatories and requests had been incomplete and insufficient. Mr. Mashek then filed a motion for continuance on April 11, 2017, asserting, *inter alia*, that his "[r]epeated discovery requests" to the Bank "had gone effectively unanswered." This motion for continuance was ultimately denied by the trial court in an order entered on June 30, 2017.

On June 5, 2017, the Bank filed a motion for partial summary judgment, requesting that the trial court dismiss Mr. Mashek's counterclaims; enter a judgment against Mr. Mashek in the amount of $291,523.10, as the amount owed as of June 2, 2017, plus interest at a rate of $26.46342 *per diem*; and reform the "deed of trust at issue." As to reformation, the Bank specifically requested:

> (a) that the deed [of] trust at issue be reformed, to state that it secures the debts of defendant [Mr. Mashek] to [the Bank], and not the obligations of Breaking Bread, Inc. to [the Bank], so that it conform with the deed of trust, as recorded in the Knox County Register's Office, nunc pro tunc to December 15, 2003, (b) that the acknowledgment of the deed of trust at issue be reformed to state "State of Minnesota, County of Anoka," rather than "State of Tennessee, County of Knox," nunc pro tunc to December 15, 2003[.]

Among other documents and copies of pleadings, the Bank attached to its motion excerpts of "Unsworn Statement[s]" given by Mr. Mashek and Ms. Mashek, both of whom had declined to be sworn in during their respective depositions, and affidavits executed by Gordon Lee Ownby, Jr., an attorney giving his expert legal opinion as to mistakes and scrivener's errors in conveyances of real property, and Shelly Spurgeon, a senior vice president for the Bank. Mr. Ownby opined that the purported differences between the Executed Deed of Trust and the Recorded Deed of Trust amounted to scrivener's errors in part because the mistakes did not affect the intended obligations of the parties. Mr. Ownby stated that when a mistake is noted in a deed or deed of trust after the closing of a transaction, it may be corrected with a scrivener's affidavit so long as "the change is made to conform the document to the intent of the parties to the transaction."

Ms. Spurgeon explained in her affidavit that in her position with the Bank, she was the Special Assets and Credit Analyst Manager and that she had maintained primary responsibility for pursuing payment of Mr. Mashek's debt on his line of credit. Ms. Spurgeon stated that Mr. Mashek's loan history, dated December 15, 2003 through May 22, 2017, reflected a principal balance owed in the amount of $244,379.70 and a total

8

payoff amount, including interest as of June 2, 2017, in the amount of $291,523.10. As summarized by the Bank in its motion, Ms. Spurgeon also stated in her affidavit that Mr. Mashek had "failed to pay the insurance on the house for at least since April 20, 2009; that he [had] failed to pay the real estate taxes on his house for at least since 2011; and that he [had] not made a payment on the line of credit since March 14, 2011."

The Bank subsequently filed a motion to bifurcate its claim for attorney's fees from the balance of the action. The Masheks, now filing pleadings as both Mr. and Ms. Mashek, filed a response in opposition to the Bank's motion for partial summary judgment and several other pleadings and exhibits, including, *inter alia*, motions to strike the excerpts of unsworn statements and the affidavits noted above, as well as their own affidavits purporting to clarify their unsworn statements given in deposition.

Following a hearing, the trial court entered its Memorandum Opinion and Order granting partial summary judgment to the Bank on July 13, 2017. The trial court granted the Bank's motion to reform the Executed Deed of Trust and to declare the deed, as reformed, to be enforceable, allowing the Bank to reinstate foreclosure proceedings regarding the Property. In so determining, the trial court found that "the changes sought to the documents by [the Bank] fall within the definition of 'scrivener's errors'" and that the Masheks had received the benefit "from the agreement that they made with the bank." The trial court directed that the loan documents would be reformed, "*nunc pro tunc* to December 22, 2003, when they were fully executed" and that the Executed Deed of Trust would be reformed "to reflect that it secures the debt of [Mr. Mashek], and the Notary Acknowledgment should reflect that the documents were notarized in Minnesota." The trial court additionally directed that "the box denoting the Deed of Trust as securing an 'Open Ended Mortgage' shall be checked."

The trial court summarized its findings in this regard as follows in pertinent part:

> While it is the opinion of the Court that the methods employed by [the Bank] and/or Stewart Title to correct these mistakes were deplorable, it is also the opinion of the Court that those methods, while at the very least sloppy, were not undertaken in bad faith; again the Court would come to a different conclusion had the changes been made to disadvantage the [Masheks] or materially alter the agreement they had reached. Here however the changes were made to comport the documents with the actual agreement and intentions of the Parties. While the Court certainly questions the means employed by [the Bank] and/or Stewart Title in conforming the documents to reflect the intention[s] of the Parties, nothing has been presented to this Court that would cause the Court to question their motives.

9

Ultimately having found in favor of the Bank on the questions of reformation and enforceability, the trial court did not directly address the Bank's alternate claim against Stewart Title in the court's Memorandum Opinion and Order.

The Bank subsequently filed a motion to alter or amend the Memorandum Opinion and Order, seeking to have the trial court address the Bank's claim for a monetary judgment against Mr. Mashek, exclusive of attorney's fees, and seeking to have the court enter an order specifically reforming the Executed Deed of Trust to conform to the Recorded Deed of Trust. Noting certain language contained in the Memorandum Opinion and Order, the Bank also requested that the trial court alter and amend the order "to state that the alterations to the loan documents at issue were not fraudulent, forgeries or potentially criminal" and, in a supplement to the motion, requested that the trial court amend the order "to state that there was no malfeasance on the part of [the Bank]." In addition to a response to the Bank's motion to alter or amend, the Masheks filed a "Motion for Permission to Appeal, Stay of Proceeding and Sale with Combined Memorandum in Support," requesting interlocutory appeal.

Following a hearing, the trial court entered an order on October 17, 2017, granting in part and denying in part the Bank's motion to alter or amend. The trial court granted the motion as to the monetary judgment, awarding to the Bank $294,566.39, "representing the principal balance and the accrued interest owed by Douglas V. Mashek on his line of credit with the [Bank] through September 25, 2017." Noting that the Masheks had in their pleadings "neither admitted nor denied the statements in Shelly Spurgeon's affidavit, saying only that 'Defendants only agree that the figure is on the Affidavit of Shelly Spurgeon,'" the trial court found that the Masheks had "filed nothing to create a genuine issue of material fact regarding the amount owed."

The trial court granted the Bank's motion as to the reformation of the Executed Deed of Trust, directing that *nunc pro tunc* to December 22, 2003, it would be reformed "to conform with the deed of trust recorded as Instrument No. 200401160070275 in the Knox County Register's Office." The trial court also directed that the Recorded Deed of Trust would be reformed, *nunc pro tunc* to December 22, 2003, "so that the box preceding the first paragraph thereof is checked," indicating an open-end mortgage. The trial court denied the Bank's motion to alter or amend in all other respects without further comment in the order.

On November 17, 2017, the Bank filed an application for attorney's fees and for entry of a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Attaching detailed invoices, the Bank requested an award of $84,230.25 in attorney's fees and $7,135.34 in legal expenses, for a total amount requested of $91,365.59. The

Masheks filed, *inter alia*, a response in opposition to the Bank's motion for attorney's fees.

Following a hearing conducted on January 30, 2018, the Bank filed a revised application for attorney's fees on February 28, 2018, noting that the revision had been directed by the trial court during the hearing. In its revised application, the Bank requested those "attorney's fees and expenses up until the filing of this action and the work preparatory thereto." Again attaching detailed invoices, as well as an affidavit executed by the Bank's counsel, the Bank requested $6,226.00 in attorney's fees and $2,569.84 in legal expenses, for a total request in the amount of $8,795.84. The Bank expressly stated in the revised application that it "does not waive, and reserves its rights, relative to its attorney's fees and expenses incurred in connection with this action."

The Masheks subsequently filed a "Motion to Vacate Void Judgment," "Motion for Leave to Depose Shelly Spurgeon et al.," and an opposition to the Bank's revised application for attorney's fees. The Bank filed responses to these motions, and the Masheks replied to the responses.

On November 5, 2018, the trial court entered a "Final Order" granting the Bank's revised application for attorney's fees, denying the Masheks' pending motions, and certifying the order as final pursuant to Tennessee Rule of Civil Procedure 54.02.[3] Upon the Bank's subsequent motion, the trial court entered an "Amended Final Order" on December 5, 2018, which was substantively identical except for language added to fully comply with Rule 54.02. In so ruling, the trial court stated the following in pertinent part:

> After extensive litigation, this Court rendered its opinion on July 13, 2017. This Court found that, while [the Bank] and/or [its] agents engaged in some questionable behavior as regards the loan at issue, none of those actions affected the rights or responsibilities of the Masheks under the loan documents they signed. Pursuant to those loan documents, [the Bank] is entitled to recover attorney's fees necessitated by the institution of litigation necessary to enforce the provisions of the loan documents. Because this Court found that the majority of the litigation necessitated by this matter

---

[3] Tennessee Rule of Civil Procedure 54.02(1) provides in pertinent part:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

was occasioned by the actions of [the Bank] and/or its agents, the Court directed that it would only award such attorney's fees as would be expected in an ordinary foreclosure action. [The Bank] has now complied with this Order and has submitted a request for fees in the amount of $8,795.84. The Court has carefully reviewed the request and finds it fair and reasonable and therefore awards a judgment in that amount to [the Bank].

The Court finds that the arguments put forth by the [Masheks] in both their opposition to the award of attorney's fees and their Motion to Vacate this Court's Judgment are in their entirety either attempts to re-litigate the matters already decided by this Court or based on legal theories which find no support in Tennessee law and Jurisprudence. Therefore all other pending motions are DENIED and this Order shall be considered a Final Order pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure upon the Court's express determination that there is no just reason for delay and upon the Court's express direction for the entry of judgment.

Upon the Masheks' April 2018 motion to depose Ms. Spurgeon, November 2018 motion to clarify the November 2018 order, motion to alter or amend the December 2018 order, and amended motion to alter or amend, the trial court entered a "Final Order" on March 4, 2019, denying the motions and again certifying the order as final pursuant to Rule 54.02. According to its March 2019 order, the trial court conducted a hearing on February 11, 2019, and "[w]ithout hearing argument," "announced that it had fully considered the [Masheks' pending] Motions, had found each of them to be without merit, and had determined that each of them should be denied." The Masheks timely appealed.

## II. Issues Presented

The Masheks present six issues on appeal, which we have restated and slightly reordered as follows:

1.  Whether the trial court erred by granting partial summary judgment in favor of the Bank.

2.  Whether the trial court erred by granting the Bank's request for reformation of the loan documents.

3.  Whether the trial court erred by granting a monetary judgment to the Bank for the principal and interest pursuant to the HELOC in a total amount of $294,566.39.

12

4. Whether the trial court erred by granting a monetary judgment to the Bank for attorney's fees and expenses in the amount of $8,795.84.

5. Whether the trial court erred by failing to dismiss the Bank's complaint *sua sponte*.

6. Whether the trial court erred by dismissing the Masheks' counterclaims.

The Bank has raised two additional issues, which we have restated as follows:

7. Whether the trial court erred by finding that there was an apparent fraudulent acknowledgement on the Rescission Notice, that the Bank acted fraudulently, that the alterations to the Rescission Notice were potentially criminal, and that the Bank acted with apparent malfeasance, and if so, whether the trial court erred by declining to amend its Memorandum Opinion and Order to state that the changes to the loan documents were not fraudulent, forgeries, or potentially criminal.

8. Whether the trial court erred by declining to award the full amount of attorney's fees and expenses initially requested by the Bank.

III.  Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)).  As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250.  As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's

13

claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. July 22, 2019) (quoting *Rye*, 477 S.W.3d at 265)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary

14

judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011). However, this Court reviews a trial court's decision concerning attorney's fees according to an abuse of discretion standard. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted). Likewise, "[w]e review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion." *Robinson v. Currey*, 153 S.W.3d 32, 38 (Tenn. Ct. App. 2004) (quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We respect the Masheks' decision to proceed without benefit of counsel and note that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Appellate Record

At the outset, we address, *sua sponte*, whether a supplementation made to the appellate record by order of the trial court may properly be considered by this Court on appeal. *See* Tenn. R. App. P. 13(c) (providing in relevant part that appellate courts "may consider those facts established by the evidence in the trial court and set forth in the record . . . ."). During the pendency of this appeal, the Masheks did not initially file any transcript, statement of the evidence, or notice stating that neither would be filed pursuant to Tennessee Rule of Appellate Procedure 24. Following entry of this Court's

administrative order directing the Masheks to comply with Rule 24 or show cause why the appeal should not be dismissed, the Masheks filed with the trial court, *inter alia*, a "Belated Declarations Pursuant to TRAP 24" and an "Affidavit of recordings for depositions of Lynne Begluitti and Stacy Mynatt, Affidavit of transcript and three (3) audio compact discs" related to the April 26, 2018 motions hearing.[4]

In response, the Bank filed a motion with this Court requesting dismissal of the appeal, pursuant to Tennessee Rule of Appellate Procedure 26(b), for failure to timely file a transcript or statement. In a Tennessee Rule of Appellate Procedure 24(e) motion concomitantly filed with the trial court, the Bank objected to the inclusion in the record of the affidavits and compact discs ("CDs") of Ms. Begluitti's and Ms. Mynatt's depositions, stating that "[n]either deposition was filed in connection with the [Bank's] motion for summary judgment or the [Masheks'] response thereto, and neither deposition was placed in evidence or marked as an exhibit to any other motion hearing . . . ." Concerning Mr. Mashek's affidavit of the April 26, 2018 motions hearing, the Bank stated in its Rule 24(e) motion that although the affidavit "contains errors," the Bank "does not think the errors are of such a nature that an objection needs to be made." The Masheks filed a response objecting to the Bank's motion to dismiss.

On June 25, 2019, this Court entered an order denying the Bank's motion to dismiss the appeal upon determining that the Masheks' filing should be construed as a late-filed statement of the evidence. This Court stated that the Bank's time to respond, pursuant to Tennessee Rule of Appellate Procedure 24(b), would begin to run as of the date of this Court's order. Rule 24(b) provides in pertinent part:

> If the appellee has objections to the transcript as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of notice of the filing of the transcript. Any differences regarding the transcript shall be settled as set forth in subdivision (e) of this rule.

Tennessee Rule of Appellate Procedure 24(e) provides:

> If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the

---

[4] According to discovery documents in the record, Ms. Begliuitti is a former employee of the Bank, and Ms. Mynatt is a former employee of Abstract Title.

determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Following a hearing conducted pursuant to Rule 24(e), the trial court entered an order on August 14, 2019, noting that the Bank had presented objections to the Masheks' request to include the affidavits and CDs of Ms. Begluitti's and Ms. Mynatt's depositions in the record. The trial court explained the following procedural background concerning these items:

> The Court previously granted [the Bank's] motion for determination that Lynne Begluitti was, for purposes of Rule 32.01(3) of the Tennessee Rules of Civil Procedure, unavailable as defined in Rule 804(a)(4) of the Tennessee Rules of Evidence, without the Begluitti Deposition transcript or exhibits referenced therein being provided to the Court, over the Masheks' objection.
>
> The Masheks argued the above listed items should be included because the deposition of Lynne Begluitti should have been included in [the Bank's] motion for determination that Lynne Begluitti was unavailable. The Masheks further argued that the exhibits referenced in the depositions of Lynne Begluitti and Stacy Mynatt ought in fairness to be considered contemporaneously with it.

In its order, the trial court allowed supplementation of the appellate record with the affidavits and CDs at issue, stating:

> The Court determined that, because the Masheks are unrepresented and are learning as they go and in fairness and to give the court of appeals as complete a record as possible to allow the Masheks to have the CD recordings, affidavits of transcript, and exhibits to the Begluitti and Mynatt depositions added to the record for appeals, with a note to the Court of Appeals that they were not presented to the Court and they were not considered by the Court in its determination on the Motion for Summary Judgment, but were requested by the Masheks.

We emphasize that with exceptions not applicable here, "those facts established by the evidence in the trial court and set forth in the record" may be considered by this Court on appeal. *See* Tenn. R. App P. 13(c). Therefore, we determine that this Court must not consider "the CD recordings, affidavits of transcript, and exhibits to the Begluitti and Mynatt depositions" because those items were not presented to or considered by the trial

17

court when it granted the Bank's motion for partial summary judgment. *See Cartwright v. Jackson Capital*, No. W2011-00570-COA-R3-CV, 2012 WL 1997803, at *11 n.9 (Tenn. Ct. App. June 5, 2012) ("In considering whether the trial court erred in granting summary judgment, we will look to the evidence that the parties presented to the trial court at each stage of the summary judgment proceedings in order to decide whether the parties met their burden of production and whether a genuine issue of fact existed." (citing *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008)); *see generally, Hessmer*, 138 S.W.3d at 903 ("[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.").

## V.  Trial Court's Grant of Partial Summary Judgment

Primarily at issue in the trial court's grant of partial summary judgment to the Bank are (1) the reformation of the Executed Deed of Trust with the declaration that the Executed Deed of Trust, as reformed, is enforceable as a security instrument to encumber the Property; (2) the monetary judgment granted to the Bank for the principal and interest owed by Mr. Mashek on the Note; and (3) the award of attorney's fees and expenses to the Bank.  We will address each of these issues in turn.

At the outset of this analysis, it is helpful to set forth the operative relationship between the Executed Deed of Trust, as a security instrument, and the Note, as a negotiable instrument.  As this Court has explained:

> A deed of trust is an instrument which secures with real property the payment of a debt, typically evidenced by a promissory note.  59 C.J.S. *Mortgages,* §§ 15 and 204 (2013).  Promissory notes secured by deeds of trust are generally considered negotiable instruments governed by Article 3 of the Uniform Commercial Code.
>
> It is a maxim of the law that the "security follows the debt." Douglas J. Whaley, *Mortgage Foreclosures, Promissory Notes, and the Uniform Commercial Code,* 39 W. ST. U.L. REV. 313, 326-27.  The United States Supreme Court established this fundamental principle as early as 1873, stating:
>
> > The note and mortgage are inseparable; the [note] as essential, the [mortgage] as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the [mortgage] alone is a nullity . . . .  The mortgage can have no separate existence.  When the note is paid the mortgage

> expires. It cannot survive for a moment the debt which the note represents.

> *Id.* at 326-27 (quoting *Carpenter v. Longan,* 16 Wall. 271, 83 U.S. 271, 274, 21 L.Ed. 313 (1872)).

> This principle has been reiterated by the Tennessee Supreme Court, which held: "[t]he policy of the law is to treat the note as the principal thing and the mortgage as the incident—the transfer of the note secured as a transfer *pro tanto* of the incident, the lien of the mortgage." *W.C. Early Co. v. Williams,* 135 Tenn. 249, 186 S.W. 102, 103-04 (Tenn. 1916).

*Dickerson v. Regions Bank*, No. M2012-01415-COA-R3-CV, 2014 WL 1118076, at *8 (Tenn. Ct. App. Mar. 19, 2014); *see also Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 268 n.1 (Tenn. 2015) (noting that in Tennessee, as in many states, a deed of trust is the security instrument used, "by which the legal title to real property is placed in one or more trustees, to secure the repayment of a sum of money or the performance of other conditions" (quoting *Cadence Bank, N.A. v. Latting Rd. Partners, LLC*, 699 F. Supp. 2d 1033, 1035 n.1 (W.D. Tenn. 2010))).[5] "Deeds of trust are not, in and of themselves, negotiable instruments." *Levine v. March*, 266 S.W.3d 426, 439 n.14 (Tenn. Ct. App. 2007).

In the case at bar, the alterations at issue were to the Executed Deed of Trust (and in turn the Recorded Deed of Trust), along with the related Rescission Notice. Although the Masheks raise an issue concerning the monetary judgment granted to the Bank, the Masheks have not alleged any alterations to the Note itself. Therefore, even without an accompanying deed of trust, the Note would remain a negotiable instrument, albeit an unsecured one, representing the agreement entered into by the parties for repayment of the principal borrowed by Mr. Mashek through future advances and applicable interest. *See generally*, *Dickerson*, 2014 WL 1118076, at *8.

---

[5] The Bank asserts that the promissory note at issue does not meet the definition of a "negotiable instrument" as provided in Tennessee Code Annotated § 47-3-104 (Supp. 2019) and is therefore not governed by Article 3 of the Uniform Commercial Code—Negotiable Instruments, codified at Tennessee Code Annotated § 47-3-101 (2001 & Supp. 2019) *et seq.* We disagree with this assertion. Promissory notes in transactions such as the one in the instant action have been treated by Tennessee courts as negotiable instruments governed by Article 3. *See, e.g.*, *Mortg. Elec. Registration Sys.*, 488 S.W.3d at 267; *Dickerson*, 2014 WL 1118076, at *8. Tennessee Code Annotated § 47-3-104(d) (2013) does provide an exception for promissory notes that at the time of issuance or upon first coming into possession of the holder, contain "a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this chapter." The promissory note in the instant action contains no such statement.

A. Reformation of Executed Deed of Trust

The Masheks contend that the trial court erred by granting partial summary judgment to the Bank upon the trial court's finding that the Bank was entitled to reform the Executed Deed of Trust to conform to the Recorded Deed of Trust with the addition of the check mark indicating an open-end mortgage. The Masheks thereby contend that the trial court erred in finding that the reformed deed of trust would be enforceable as a security instrument encumbering the Property. Upon our thorough review of the record and applicable authorities, we determine that because the Bank recorded a deed of trust that included a unilateral alteration made after the document's execution, specifically the omission of a notation that it was an open-end mortgage, reformation is not available to the Bank as a matter of law.

Regarding the reformation of a written agreement, such as the Executed Deed of Trust at issue here, this Court has articulated:

> [I]t is well settled that the courts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain. The courts are also empowered to modify the provisions of a written contract where only one of the parties was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud.
>
> The judicial alteration of the provisions of a written agreement is an equitable remedy known as "reformation." The basic purpose of reformation is to make the contract "conform to the real intention of the parties." It is "driven by a respect for the parties' intent and gives effect to the terms mutually agreed upon by the parties." Because the law strongly favors the validity of written instruments, a person seeking to reform a written contract must do more than prove a mistake by a preponderance of the evidence. Instead, the evidence of mistake must be clear and convincing.
>
> An important subcategory of mistake is mistake in the expression, or integration, of the agreement. A mistake in expression occurs where one or both parties to a written contract erroneously believe that the contract embodies the agreement that both parties intended it to express. In such cases, the courts may adjust the provisions of the written contract to make it express the true agreement reached by the parties.

20

In order to obtain reformation on the basis of mistake in expression, a party must present clear and convincing evidence that: (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation. Reformation is not automatically barred simply because one of the parties denies that there was an antecedent agreement or claims that the mistake was not mutual.

*Sikora v. Vanderploeg*, 212 S.W.3d 277, 286-88 (Tenn. Ct. App. 2006) (footnotes and internal citations omitted).

In initially granting the Bank's motion to reform the Executed Deed of Trust in its Memorandum Opinion and Order, the trial court concluded that the following facts had occurred to create the situation in this case:

The record makes apparent to this Court what has occurred here. [The Bank] agreed to provide a revolving line of credit to the Masheks, to be secured by a Deed of Trust on the [Property]. The usual documents were drafted and executed in due course by [the Bank] and the [Masheks]. However, because of sloppy drafting and a failure on all parties' part to catch the errors, the Deed of Trust submitted by [the Bank] to the Masheks contained several errors, to wit: (1) The Deed of Trust as submitted by [the Bank] and executed by the [Masheks] purports to secure the obligation of Breaking Bread Inc., an entity unknown to the Parties; (2) the Deed of Trust contains a Notary Acknowledgment indicating it was executed in Knox County, when in fact it was executed and notarized in Minnesota; (3) the Notice of Right of Rescission was executed on December 22, 2003, but for some reason [the Bank] or Stewart Title desired that it reflect the date on which the Promissory Note was executed (December 15, 2003); and (4) the "Open Ended Mortgage" check box, checked in the original Deed of Trust, was left unchecked in the document actually filed with the Registrar's Office.

(Emphasis added.)

At the outset, we note that the parties do not dispute the trial court's findings as to the existence of the four discrepancies in the loan documents listed in the trial court's Memorandum Opinion and Order. The first two discrepancies constituted purported

"mistakes" in the Executed Deed of Trust, in other words, elements that at the time of the loan documents' execution in December 2003, did not match the undisputed bargain entered into between the Bank and the Masheks.

As to the third discrepancy, the change in date on the Rescission Notice, the trial court found that the reason for the change in date by the Masheks' signatures acknowledging that they had received the notice was not clear. It is undisputed that the date was altered after the Masheks had subsequently executed the confirmation that they did not wish to rescind the agreement on December 30, 2003, and it is undisputed that the Masheks' initials by the altered date were written by someone other than the Masheks. However, the Masheks do not dispute that the actual signatures on the Rescission Notice were theirs.

In contrast, the fourth discrepancy, underlined above, was correct in the Executed Deed of Trust, meaning that the box was checked to indicate that "this is an OPEN-END MORTGAGE" and that this indication matched the parties' original agreement. The unchecked box in the Recorded Deed of Trust did not match the parties' original agreement. The trial court's findings reflect that the court clearly noted this distinction concerning the fourth discrepancy; however, we determine that the listing of the fourth discrepancy concerning the open-end mortgage as though it were another mistake in the executed loan documents ultimately proved erroneous in the trial court's analysis.

In its Memorandum Opinion and Order, the trial court continued its findings regarding how the situation occurred as follows:

Clearly, after the documents were executed and returned to [the Bank] by the Masheks, someone, either an employee or an agent of [the Bank], noticed the mistakes. At this point there were several legitimate options open to [the Bank]. It could have had the documents redrafted to properly reflect the intentions of the parties and resubmitted those documents to the Masheks. Mr. Mashek has stated in his deposition and in open court that he probably would have signed the corrected documents. In fact, Mr. Mashek has stated in open court and in deposition that had he noticed the "Breaking Bread" error he would have pointed it out to [the Bank], and the Court believes he would have done so. Had this been offered and refused, [the Bank] could have filed an action to reform the documents, which in fact they now belatedly seek to do. At any time after April 2004, [the Bank] could have filed an Affidavit of Scrivener's Error with the Registrar's Office to conform the documents to the intentions of the Parties. None of those options were availed to by [the Bank] until March 2012, when [the Bank] filed this action seeking to enforce the

22

documents filed with the Registrar's Office or in the alternative to reform the documents. Instead [the Bank] or its agents indulged in self-help, unilaterally altering the documents and in one case actually forging an acknowledgment by the Masheks in the alteration, and then filing the unilaterally altered documents with the Registrar's Office. These actions are at the very least negligent and potentially criminal in nature. At a minimum they shock the conscience of the Court.

Although the Bank has raised an issue concerning the trial court's denial of the Bank's motion to alter or amend a portion of the court's language in the above section, which we will address in a subsequent section of this opinion, we discern no genuine issue of material fact regarding the court's essential finding that, as concerns the parties involved in this appeal, the alterations to the Executed Deed of Trust and the Rescission Notice prior to recordation were made either by the Bank or its agent(s).

In its Memorandum Opinion and Order, the trial court next focused on the question of whether the Masheks were "damaged by these actions in any material way," concluding that "[t]he testimony and actions of the [Masheks] indicate that they were not." The trial court continued:

Mr. Mashek has stated in deposition and in open court that it was his intent to obtain a line of credit from [the Bank], and to secure that line of credit by the execution of a Deed of Trust encumbering his home. He acknowledges that he signed the Promissory Note, although he hedges somewhat in disclaiming an understanding that the document he signed was a Promissory Note. It is ancient law that a claimed lack of understanding of the contents of a document will not excuse performance of the requirements of the document he signed: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." Upton v. Tribilcock, 91 U.S. 45[, 50] (1875).

The [Masheks] do not contest that they signed the Deed of Trust, nor do they contest that their intent and purpose in signing that document was to secure the Line of Credit from [the Bank]. The [Masheks] further do not contest the fact that they signed the Notice of Right of Rescission document on December 22, 2003, nor do they contest that they signed, on December 30, 2003, the acknowledgment on the same document that they had no

23

desire to rescind the agreement. And again, Mr. [Mashek] does not contest the validity of his signature on the "Sweep Authorization Form," executed December 15, 2003, which explicitly acknowledges his understanding that he could lose his home if he does not "meet the obligations in [his] Home Equity Line of Credit with Tennessee State Bank." Mr. Mashek drew against the line of credit, paid down the draw and sought to close it in 2005 or 2006. When told he would have to pay a fee for early termination of the line of credit, instead of letting it lay fallow until such time as he could terminate it without cost, he began to again draw on the line, and stated in open court that he did so with the understanding that the same terms and conditions applied: that the money would have to be repaid and that the debt was secured by the Deed of Trust against his home.

The [Masheks'] defense to this action is that [the Bank] or its agents acted in bad faith, and that they should be relieved of their debt based upon the misfeasance and malfeasance of the bank and/or its agents. Had the alterations made by [the Bank] or its agents materially changed the intended bargain between [the Bank] and the [Masheks]; had the alterations placed the [Masheks] in a different position vis[-à-vis] the Bank than they had bargained for, for example by changing the rate of interest or adding additional provisions to the contracts that the [Masheks] actually executed, the Court would be more inclined to strike those provisions or deem the entire agreement unenforceable. But here it appears that the changes, albeit procedurally questionable and even perhaps fraudulent, were made not to disadvantage the [Masheks] or change the terms of the agreement, but instead were made to conform the flawed documents to the actual intentions of the Parties. The material provisions were in most respects unchanged from what the parties intended: the altered Deed of Trust actually secures the debt of Douglas [Mashek], as Mr. [Mashek] has testified was always his understanding and intention. The alterations to the Notice of Right of Rescission were immaterial, as Mr. and Mrs. [Mashek] never attempted to rescind the agreement, and in fact signed an acknowledgment of their intent not to rescind on December 30, 2003, a full eight days after the date on which they actually executed the Notice. Mr. [Mashek] has made some suggestions that the Notice was flawed in that the notice states on its face that they must rescind no later than December 18, 2003, a date that passed before the Notice was executed, but had this been a problem for Mr. [Mashek] he could have alerted the Bank to the error. In any event there is no evidence that Mr. [Mashek] ever intended to rescind the agreement. Likewise the alteration of the Notary Acknowledgment to reflect that the document had actually been signed and notarized in

24

Minnesota merely reflects an uncontested fact, and works no hardship on the [Masheks].

(Footnote and internal citation to record omitted.)

We note that the trial court's finding that the alterations made to the Executed Deed of Trust prior to recordation "were made to conform the flawed documents to the actual intentions of the Parties" cannot be said in relation to the omission on the Recorded Deed of Trust of the checkmark indicating an open-end mortgage because this checkmark was undisputedly part of the original agreement. Concerning this omission, the trial court stated:

Slightly more troubling to the Court is the failure of [the Bank] or its agents to check the box on the Deed of Trust that describes it as an open ended mortgage, and informing (the Masheks) of certain rights they might have under Tennessee Law. In fact, the box was checked on the form they actually signed, and so they were on notice of those rights. Additionally, Mr. [Mashek] testified that he did not read the Deed of Trust and did not ask anyone what it was before he signed it. Similarly, Mrs. [Mashek] disclaimed any knowledge or understanding of the Deed of Trust when she signed it. It is quite unlikely that the [Masheks] were prejudiced by the failure of the Bank or its agents to check this box on the document filed with the Registrar's office when: (a) that failure was unknown to the [Masheks] when they drew on the line of credit, (b) they claim not to have read or understood the Deed of Trust, and (c) even though their copy of the Deed of Trust provided them notice of rights they may have had under Chapter 137 of the Tennessee Public Acts of 1987, there is no evidence that they ever explored those rights or tried to assert them.

In ultimately determining that the Bank should be allowed to reform the loan documents, the trial court considered the reformation requirements set forth in *Sikora*, 212 S.W.3d at 287-88, concluding as follows in relevant part:

Sikora holds that in order to reform an instrument, the party seeking reformation must show by clear and convincing evidence that (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation. In this case it is readily apparent that the first three parts of the test have been

met by clear and convincing evidence. It is undisputed that Mr. Mashek desired a line of credit, and intended and understood that the line would be secured by a Deed of Trust on his home. It is undisputed that Mr. and Mrs. Mashek signed a series of documents intended to carry out this agreement. It is similarly undisputed that the Deed of Trust which purported to secure the indebtedness of "Breaking Bread Inc." did not reflect the understanding or agreement of the parties. The only aspect of the Sikora test that is disputed is the question of whether the fault in the documents, specifically the Deed of Trust, was the result of gross negligence on the part of [the Bank]. On that point, the Sikora Court teaches that a mistake based on inattention or inadvertence does not rise to the level of gross negligence. The Court finds that the mistakes made in the Deed of Trust meet this definition. It is undisputed that "Breaking Bread Inc." was a party unknown to either [the Bank] or the [Masheks]. It is undisputed that neither [the Bank] nor the [Masheks] ever intended that "Breaking Bread Inc." be a party to their agreement. The [Masheks] disclaim any knowledge of "Breaking Bread Inc." and assert that it was never their intention to pledge their home as security for the debts of "Breaking Bread Inc." It appears to this Court that the inclusion of "Breaking Bread Inc." as the party whose debts were to be secured by the Deed of Trust was a matter of inattention or inadvertence on the part of the party drafting the Deed of Trust, in this case apparently Defendant Stewart Title Company. There has been no evidence produced before this Court that would suggest that the inclusion of "Breaking Bread Inc." in the Deed of Trust was the result of bad faith or any sinister motive by [the Bank] or Stewart Title Company. While it is the opinion of the Court that the methods employed by [the Bank] and/or Stewart Title to correct these mistakes were deplorable, it is also the opinion of the Court that those methods, while at the very least sloppy, were not undertaken in bad faith; again the Court would come to a different conclusion had the changes been made to disadvantage the [Masheks] or materially alter the agreement they had reached. Here however the changes were made to comport the documents with the actual agreement and intentions of the Parties. While the Court certainly questions the means employed by [the Bank] and/or Stewart Title in conforming the documents to reflect the intention of the Parties, nothing has been presented to this Court that would cause the Court to question their motives.

At the end of the day, the [Masheks], or at least Mr. [Mashek], sought a source of credit from [the Bank]. They obtained that credit, took advantage of it and benefited from it. Although the Court does not doubt

that the [Masheks] feel themselves aggrieved by the post-execution alteration of the documents central to this business relationship, they cannot in good faith argue that they did not benefit from the agreement that they made with the bank, and they cannot deny (and have not denied) that it was always their intention to repay the funds they were advanced, or that they voluntarily and intentionally pledged their home as security for any funds advanced to them.

In short, the Court finds that the changes sought to the documents by [the Bank] fall within the definition of "scrivener's errors" and that the documents shall be reformed *nunc pro tunc* to December 22, 2003, when they were fully executed. The Deed of Trust shall be reformed to reflect that it secures the debt of Douglas V. [Mashek], and the Notary Acknowledgment should reflect that the documents were notarized in Minnesota. Additionally, the box denoting the Deed of Trust as securing an "Open Ended Mortgage" shall be checked. Further, the Court finds that the findings announced herein fully address the claims made in the [Masheks'] Counter-Complaint, and that therefore the Counter-Complaint shall be dismissed. [The Bank] shall be allowed to pursue foreclosure proceedings if it wishes. However, the Court would strongly encourage [the Bank] to attempt to reach some reasonable agreement with the [Masheks] to allow them to attempt to bring themselves into compliance with the terms of the line of credit, the Court finding that their self-help response[s] to the discovery of the altered loan documents, while lacking legal support, were not borne out of bad faith on the part of the [Masheks], at least based upon the record which has been brought before this Court. The [Masheks] appear to this Court to be honorable people, legitimately, in their view, aggrieved by apparent malfeasance of [the Bank] and/or its agents and acting upon their consciences, and this Court would express a sincere desire that they not lose their home because of this most unfortunate series of events.

The trial court thereby determined that reformation of the loan documents was appropriate because the discrepancies the Bank sought to correct constituted scrivener's errors; because the mistakes were the result of "inattention or inadvertence," rather than gross negligence, on the part of the Bank or its agent(s); and because the Masheks obtained the benefit of their bargain with the Bank.

27

## 1. Mutual Mistake

If the Bank's action to reform the Executed Deed of Trust were based solely on two of the alterations made to the Executed Deed of Trust prior to recordation, we would agree with the trial court. These two alterations were corrections to mistakes in expression, namely the change from Breaking Bread, Inc., to Mr. Mashek for the entity whose debt was secured and the change in the location of notarization from Knox County, Tennessee, to Anoka County, Minnesota. "A mistake in expression occurs where one or both parties to a written contract erroneously believe that the contract embodies the agreement that both parties intended it to express." *Sikora*, 212 S.W.3d at 287.

Despite the Masheks' protestations that they did not read the Executed Deed of Trust before signing it, they are charged with knowledge of the contents of the documents they signed. *See Dixon v. Grissom*, No. E2014-00947-COA-R9-CV, 2015 WL 3643426, at *9 (Tenn. Ct. App. June 12, 2015) ("[P]arties have a duty to read the written contracts they enter into and are ordinarily chargeable with knowledge of their contents regardless of whether they have actually read them." (citing *Sikora*, 212 S.w.3d at 290)). Because the Masheks were presumably aware of what was in the Executed Deed of Trust, these two mistakes in expression were mutual mistakes. *See Sikora*, 212 S.W.3d at 288 ("As long as the party seeking reformation establishes the elements of a mistake in expression, any discrepancy between the parties' prior agreement and their written contract is presumed to be the result of a mutual mistake (unless, of course, there is evidence of fraud)).[6]

Applying the requirements for reformation set forth in *Sikora* to these two discrepancies between the Executed Deed of Trust and the Recorded Deed of Trust, we determine that the trial court properly found clear and convincing evidence that reformation would have been appropriate to correct these two errors because (1) the parties had reached a prior agreement that Mr. Mashek's obligation under the Note would be secured by the Property; (2) the parties intended this agreement to be included in the Executed Deed of Trust; (3) the error of naming an unrelated party as the one whose debts were secured differed from the parties' agreement, and a simple factual inconsistency existed in the wrong county and state of notarization; and (4) the two

---

[6] Although the Masheks have asserted a claim for fraud on the part of the Bank through the unilateral alterations to the loan documents after the documents' execution, we note that the fraud referred to in *Sikora* would be a defendant's intentional insertion of a material difference in the parties' agreement at the time of the written documents' execution to the detriment of the party seeking reformation (in this case, the Bank). *See Sikora*, 212 S.W.3d at 288 ("To reform a contract based on mistake, a plaintiff must establish that the contract was executed under mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation." (quoting 27 WILLISTON ON CONTRACTS § 70:93, at 495)).

mistakes amounted to scrivener's errors rather than the result of gross negligence. *See Sikora*, 212 S.W.3d at 288.

Concerning the trial court's finding, specifically as to these two errors only, that they were not the result of gross negligence on the part of the Bank or its agent(s), we note that a party's "inattention" in drafting an instrument is not a bar to reformation. *See id.* at 290. As this Court has explained:

> Although courts have stated that the mistake must not be due to the complainant's own negligence, *see, e.g., Klosterman* [*Dev. Corp. v. Outlaw Aircraft Sales, Inc.*]*,* 102 S.W.3d [621,] 632 [(Tenn. Ct. App. 2002)], "reformation is denied only in 'extreme cases' where a party's fault 'amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.'" *Sikora* 212 S.W.3d at 290 (citing Restatement (Second) of Contracts § 157 & cmt. *a,* at 416). Mere inattention, as the word is used in common parlance, is not an absolute bar to reformation under Tennessee law. *Id.* at 289. Often times, a party could have avoided the mistake by exercising reasonable care, and if mere negligence barred recovery, the availability of relief for mutual mistake would be severely circumscribed. *See id.,* n.15 (citing Restatement (Second) of Contracts § 157 cmt. *a,* at 416).

*Hunt v. Twisdale*, No. M2006-01870-COA-R3-CV, 2007 WL 2827051, at *7 (Tenn. Ct. App. Sept. 28, 2007).

We acknowledge that throughout this litigation, the Masheks have essentially argued that when the Bank or its agent(s) altered the Executed Deed of Trust and recorded the altered deed without any notification to the Masheks of the alterations, the Bank should have been precluded from reforming or enforcing the Recorded Deed of Trust as a matter of law. However, the Masheks have presented no applicable authority, and our research has revealed none, for the proposition that the Bank's or its agent's action in, prior to recordation, correcting the two scrivener's errors in the Executed Deed of Trust to align with the parties' mutual understanding of their bargain at the time of execution would have been an automatic bar to enforcement of the Executed Deed of Trust. We agree with the trial court that the Bank's "self-help" actions in this regard were "procedurally questionable and even perhaps fraudulent," but because the correction of these two scrivener's errors did not materially alter the parties' bargain, the Bank would not have been automatically barred from enforcing the Recorded Deed of Trust solely because it made these corrections through improper procedure.

In support of their argument, the Masheks rely in part on Tennessee Code Annotated § 66-5-107 (2015) to assert that "statutory estoppel" should be a bar to enforcement of the Executed Deed of Trust. This statutory section provides a procedure whereby

> [w]henever an error or mistake is made in any deed of conveyance, or in the registration thereof, either in courses, distances, or names, the person liable to injury by such error or mistake may prefer a petition to the circuit court of the county in which the land is situated, setting forth the nature of the mistake or error, and all and singular the matters relative thereto.

Tenn. Code Ann. § 66-5-107(a). The statutory section also provides for public notice and the appearance of any party opposing the correction. *Id.* at (b)-(d).

> However, ultimately, the statute provides:

> The court shall examine such testimony as the petitioner may produce; and whenever it shall appear evident, from such testimony, that there was an error or mistake committed in drawing the deed of conveyance, the court shall order the same to be rectified, so as to comport with the intention of the parties; and shall further order the register of the county, in which the land is situated, to register the conveyance agreeably to the correction.

*Id.* at (e). Therefore, the purpose of the procedure provided through this correction statute is to have the recorded deed "comport with the intention of the parties," *see id.*, as the correction of the two scrivener's errors would in this case.

Contrary to the Masheks' assertion, Tennessee Code Annotated § 66-5-107 does not expressly provide for a bar to the validity of the deed if the procedure is not followed. As the trial court noted, other procedures that were available to the Bank to properly correct the scrivener's errors were to (1) file a motion to reform the Executed Deed of Trust, as the Bank has finally done here, or (2) record an affidavit of scrivener's error pursuant to Tennessee Code Annotated § 66-24-101(27) (Supp. 2019), once that newly enacted subsection took effect in April 2004, *see* 2004 Tenn. Pub. Acts, Ch. 497 §1 (S.B. 2712). *See generally, Washington Mut. Bank v. N.K.T. Land Acquisitions Inc.*, No. M2007-02040-COA-R3-CV, 2008 WL 2925299, at *5 (Tenn. Ct. App. July 23, 2008).

The Masheks argue that what the trial court found to be the Bank's or its agent's "indulge[nce] in self-help" and "unilateral[] alter[ation]" of the Executed Deed of Trust prior to recordation constitute a failure to act in good faith or in accordance with fair dealing amounting to gross negligence and should therefore bar reformation. However,

specifically as to these two errors, because the unilateral alterations to the Executed Deed of Trust occurred after the execution of the loan documents, we determine that the trial court did not err in finding that the original creation of these two mistakes was most likely the result of "mere negligence" or "mere inattention" and did not constitute gross negligence on the part of the Bank. *See Hunt*, 2007 WL 2827051, at *7.

## 2. Rescission Notice

As to the third discrepancy in the loan documents, the trial court found that the Bank or its agent(s) had unilaterally altered the Rescission Notice to change the date of the Masheks' signatures acknowledging the notice from December 22, 2003, the date they actually signed the Rescission Notice, to December 15, 2003, the date that Mr. Mashek had executed the Note. As the trial found, the Masheks do not "contest the fact that they signed the Notice of Right of Rescission document on December 22, 2003, nor do they contest that they signed, on December 30, 2003, the acknowledgment on the same document that they had no desire to rescind the agreement." This acknowledgment, labeled a "CONFIRMATION" and signed by the Masheks as "Consumers" on December 30, 2003, states as follows:

> More than 3 business days have elapsed since the undersigned received this Notice, and Truth-in-Lending disclosures, with regard to this account. The undersigned certify that the account has not been rescinded.

(Font standardized.)

The trial court found that in altering the Rescission Notice "for some reason [the Bank] or Stewart Title desired that it reflect the date on which the Promissory Note was executed (December 15, 2003)." In its complaint, amended complaint, and motion for partial summary judgment, the Bank did not specifically request reformation as to the date of the Rescission Notice confirmation. However, the Bank did request reformation of the Executed Deed of Trust *nunc pro tunc* to December 15, 2003, as the date that the entire agreement had been executed. Instead, the trial court, finding that the loan documents had not been fully executed until the Rescission Notice confirmation had actually been signed by the Masheks, granted reformation of the Executed Deed of Trust *nunc pro tunc* to December 22, 2003.

The Masheks assert that because they received the Rescission Notice seven days after signing the Executed Deed of Trust and four days after the three-day period following execution had ended, they had no way of knowing that the three-day rescission period had not ended. However, the Rescission Notice received by the Masheks stated the following in pertinent part:

**Your Right to Cancel**
We have agreed to establish an open-end credit account for you, and you have agreed to give us a mortgage/lien/security interest on/in your home as security for the account. You have a legal right under federal law to cancel this account, without cost, within three business days from whichever of the following events occurs last:

(1)      the opening date of the account which is <u>DECEMBER 15, 2003; or</u>
(2)      the date you received your Truth-in-Lending disclosures; or
(3)      the date you received this notice of your right to cancel the account.

(Underlining represents a filled blank on the form.)

The event that occurred last was clearly the Masheks' receipt of the Rescission Notice, meaning that under the plain language of the "Right to Cancel" on the notice, the Masheks were informed that they still had three days within which they could cancel the agreement.[7] *See Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153, 181 (Tenn. Ct. App. 2016) ("In interpreting the language of a contract, we are required to use 'the usual, natural, and ordinary meaning' of terms." (quoting *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 526 (Tenn. 2005))). We recognize that the Rescission Notice subsequently listed the date of December 18, 2003, as the date by which the Masheks would have had to mail a notice of cancellation. Although this date was based on the opening date of the account and was potentially confusing, a careful reading of the events triggering the three-day rescission period for the "Right to Cancel" would have revealed that the triggering date in this case was the date of receiving the notice.

Moreover, the Masheks have not at any time claimed that they actually desired to rescind the agreement when they signed the confirmation statement on December 30, 2003. Upon careful review, we agree with the trial court that the change in date of the Masheks' signatures on the Rescission Notice did not change the parties' agreement in any way and does not, in and of itself, affect the validity of the Executed Deed of Trust.

---

[7] The language setting forth the consumer's right to cancel mirrors the requirements of the Code of Federal Regulations § 1026.23 of the federal Truth in Lending Act, which the Masheks have cited in support of their argument concerning the Rescission Notice. Although the Bank asserts that the Masheks improperly relied on this provision for the first time on appeal, we find this assertion unavailing in that the Bank knew that an alteration to the Rescission Notice was at issue in the Masheks' defense to this claim and knew that in sending the notice, the Bank had been required to comply with this federal regulation.

We recognize, however, that the Masheks' central issue with regard to the Rescission Notice is not the alteration of the date by their signatures but the manner in which the change was made, with what the trial court found to be "an apparently fraudulent acknowledgment in the form of forged initials made over the handwritten correction." On appeal, the Bank does not deny that the Rescission Notice was altered after the Masheks confirmed that they did not wish to rescind the agreement. The Bank acknowledges in its brief:

> The alterations had obviously not been made at [the] time the Masheks signed the document on December 30, 2003, because if they had been made before that date, the Masheks would have seen them at the time, and the changes would have been on the copy of the rescission notice that was mailed to Mr. Mashek in January, 2004.

The Masheks essentially argue that the unauthorized writing of their initials over the handwritten correction to the date on the Rescission Notice confirmation constitutes a forgery and that even apart from the other three discrepancies in the loan documents, the Bank should be estopped from enforcing the entire agreement based on this purported forgery. Although we cannot agree that the unauthorized use of the Masheks' initials rises to the legal definition of forgery as a cause of action or invalidates the entire agreement, we agree with the Masheks insofar as any reformation of the effective date of the Rescission Notice is concerned.

It is true that a forged signature on a deed invalidates the deed. *See Beazley v. Turgeon*, 772 S.W.2d 53, 59 (Tenn. Ct. App. 1988) (determining that because "the trust deed given to defendants was a forgery," it "became null and void upon its execution"). Regarding a party's initials, Tennessee courts have long recognized that "[i]t is not necessary that a party should write his name on a note or under it to bind himself as endorser or maker; he may execute it as effectually by his initials, by figures, or a mark." *Brown v. McClanahan*, 68 Tenn. 347, 348 (Tenn. 1878) (quoting EDWARDS ON BILLS AND NOTES 150). However, as the Bank points out, "[t]he fact that a signature or endorsement is unauthorized does not necessarily establish it as a forgery unless there is also evidence of an intent to defraud." *Regions Bank v. Bric Constructors, LLC*, 380 S.W.3d 740, 768 (Tenn. Ct. App. 2011) (quoting *Bd. of Prof'l Responsibility v. Curry*, 266 S.W.3d 379, 393 (Tenn. 2008). As our Supreme Court has explained:

> The Uniform Commercial Code does not define "forgery," and instead the courts look to the definition of the offense in the criminal code. *See McConnico v. Third Nat'l Bank,* 499 S.W.2d 874, 884-85 (Tenn. 1973).

Under current law, a person commits forgery when he or she "forges a writing with intent to defraud or harm another." Tenn. Code Ann. § 39-14-114(a). Thus, a necessary element of the act of forgery is an intent to defraud. *State v. Rounsaville,* 701 S.W.2d 817, 819-20 (Tenn. 1985).

*Bd. of Prof'l Responsibility v. Curry*, 266 S.W.3d 379, 393 (Tenn. 2008) (footnote omitted). Tennessee Code Annotated § 39-14-114(b)(1)(A)(i) (2018) defines "forge" in relevant part as to "[a]lter, make, complete, execute or authenticate any writing so that it purports to [b]e the act of another who did not authorize the act[.]"

In this case, the Masheks have presented a dearth of evidence that when the Bank or its agent(s) altered the date of the Masheks' signature on the Rescission Notice and affixed the Masheks' initials to the alteration without authorization, the act was performed with an intent to defraud the Masheks. In fact, as determined above, the reason for the change is unclear because the language of the Rescission Notice allowed for a three-day rescission period after the notice had been received by the Masheks. Therefore, we also cannot find that the Bank or its agent(s) performed this act in order to perfect the agreement, and as the Bank acknowledges, the act was performed without any notice to the Masheks, let alone authorization from them.

Although the intent behind this use of the Masheks' initials "purport[ing] to [b]e the act of another who did not authorize the act," *see id.,* does not rise to the level of criminal forgery, we are in accord with the trial court's statement that the act "shock[s] the conscience of the Court." We determine that the manner in which this change was made exhibited gross negligence on the part of the Bank or its agent(s) in that the act of affixing the Masheks' initials over the altered date without authorization or notice constituted a failure to act in good faith and in accordance with reasonable standards of fair dealing. *See Sikora* 212 S.W.3d at 290 ("[R]eformation is denied only in 'extreme cases' where a party's fault 'amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.'" (quoting RESTATEMENT (SECOND) OF CONTRACTS § 157 & cmt. *a*, at 416)).

"Tennessee courts have consistently applied the principle that Tennessee law recognizes an implied covenant of good faith and fair dealing in every contract." *Dick Broad.,* 395 S.W.3d at 661 (citations omitted). As our Supreme Court has explained, [w]hile the implied covenant of good faith and fair dealing 'does not create new contractual rights or obligations, it protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement." *Id.* at 666 (quoting *Long v. McAllister-Long,* 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006)). The Masheks had a reasonable expectation that neither the Bank nor its agent(s) would place their initials on a document in supposed authorization of a change that they did not authorize. Having

34

determined that the Bank or its agent(s) exhibited gross negligence in altering the date that the Rescission Notice had been received, we conclude that the Bank could not succeed as a matter of law in its request to reform the effective date of the Rescission Notice confirmation to December 15, 2003.

### 3. Open-End Mortgage

Finally, we come to the fourth discrepancy in the loan documents, the box indicating an open-end mortgage, which was checked on the Executed Deed of Trust and not checked on the Recorded Deed of Trust. In its October 2017 order on the Bank's motion to alter or amend, the trial court directed that, *nunc pro tunc* to December 30, 2003, the Executed Deed of Trust would be reformed "to conform with the deed of trust recorded as Instrument No. 200401160070275 in the Knox County Register's Office," while also directing that the Recorded Deed of Trust would be reformed "so that the box preceding the first paragraph thereof would be checked," indicating an open-end mortgage.

During the April 2018 post-judgment motion hearing, Mr. Mashek argued that it was contradictory for the trial court to order that the Executed Deed of Trust be reformed to conform to the Recorded Deed of Trust and then also order that the box indicating an open-end mortgage be checked in the reformed document because that box had previously only been checked in the Executed Deed of Trust. The trial court explained orally that the effect of the October 2017 order would be that an entirely new document would be recorded as Instrument No. 200401160070275, which would conform with the parties' agreement as both parties understood it at the time of execution. Although we agree with the trial court that this substitution of a new deed of trust would be the effect of its reformation order, we perceive a fatal flaw in this ruling for reformation. The discrepancy concerning whether this was an open-end mortgage was not known to the Masheks until Mr. Mashek requested presentment of the Note in 2011 and discovered the accompanying discrepancies between the Executed and Recorded Deeds of Trust and the two versions of the Rescission Notice.

We determine that, beyond any issue of material fact, the unilateral alteration of the Executed Deed of Trust by the Bank or its agent(s) omitting the indication of an open-end mortgage was an alteration to the executed agreement that was made after execution but prior to recordation with no actual or constructive notice to the Masheks. Although the Recorded Deed of Trust, with the indication of an open-end mortgage omitted, was a public record open to inspection, the Bank has offered no reason why the Masheks should have suspected that the Recorded Deed of Trust would be any different from the copy of the Executed Deed of Trust they had received soon after executing the December 2003

35

agreement. We cannot find that the Masheks were chargeable with knowledge of the alteration.

This purported error in the Recorded Deed of Trust was therefore not the result of a mutual mistake in expression in the Executed Deed of Trust, as were the discrepancies in the name of the party whose debts were secured and the location of notarization. The omission of the open-end mortgage indication was a unilateral mistake on the part of the Bank or its agent(s). *See Russell v. Security Ins., Inc.*, No. 01A01-9803-CV-00135, 1999 WL 74787, at *2 (Tenn. Ct. App. Feb. 18, 1999) ("A mistake by one party coupled with ignorance thereof by the other party does not constitute a mutual mistake." (quoting 76 C.J.S. Reformation of Instruments § 29 at 382 (1996))).

Given that the Bank has acknowledged during this litigation that the parties' prior agreement was for the mortgage to be open-ended, the Bank certainly has not alleged any fraud on the part of the Masheks that would have led the Bank to omit the checkmark on the Recorded Deed of Trust. Additionally, when the Bank began foreclosure proceedings, it represented the altered Recorded Deed of Trust as if it were the same document the parties had executed. Even at the time of filing the complaint in this action, the Bank asserted that the Recorded Deed of Trust was "a true and correct copy of the Deed of Trust that was signed by Mr. Mashek and Ms. Mashek at the Closing" while also acknowledging that Mr. Mashek had produced the front page of the Executed Deed of Trust with the discrepancies visible.

Moreover, we determine that this unilateral mistake was material in nature. The open box, checked in the Executed Deed of Trust and unchecked in the Recorded Deed of Trust, is located next to the following provision:

> If this box is checked, this is an OPEN-END MORTGAGE as defined in Chapter 137, 1987 Public Acts of Tennessee, as amended, made pursuant to a revolving credit agreement of even date herewith to which reference is here made and which prescribes the terms and conditions under which advances are to be made. This Deed of Trust fixes the maximum limit of the principal indebtedness to be secured at anytime, i.e. the credit limit, and further fixes the term of the revolving credit agreement. Grantor hereby acknowledges notice that said Public Chapter 137, as amended, gives Grantor the right, by complying with its provisions, to reduce the limit on the maximum amount of the indebtedness secured by this Deed of Trust.

Tennessee Code Annotated § 47-28-101(8) (2013) defines an "Open-end mortgage" as "a mortgage securing an open-end credit agreement." The statutory definition in turn provides:

"Open-end credit agreement" means a revolving credit agreement that is secured by a mortgage and that is not entered into for commercial purposes. Any such agreement shall be included, incorporated by reference or referred to in the mortgage, and shall prescribe the terms under which advances thereunder are to be made.

Tenn. Code Ann § 47-28-101(7) (2013). Although certain provisions of the statutory scheme codified at Tennessee Code Annotated § 47-28-101 (2013), *et seq.*, apply to mortgages securing future advances that are not open-end mortgages, *see Home Fed. Bank, FSB v. First Nat'l Bank*, 110 S.W.3d 433, 438 (Tenn. Ct. App. 2002), the right referred to in the notice on the Executed Deed of Trust is unique to open-end mortgages, *see* Tenn. Code Ann. § 47-28-105 (2013).

Tennessee Code Annotated § 47-28-105(a) provides:

The credit limit under an open-end mortgage may be reduced by the borrower, whether the advances to be made thereunder are obligatory or optional, to an amount not less than the amount of principal indebtedness shown on the most recent statement of the borrower's account received by the borrower from the creditor, plus the amount of any advances initiated by the borrower subsequent to that statement.

The statutory subsection continues by setting forth the procedure a borrower must follow to effectuate a reduction in credit limit, including serving a notice of limitation on the creditor and recording same in the register's office. Tenn. Code Ann. § 47-28-105(b)-(c).

The statute further provides:

From and after the service of such a notice of limitation, the borrower shall not request or demand any further advances under the open-end credit agreement that exceed the credit limit stated in the notice, and the creditor will be relieved and released from any obligation or commitment to make advances thereunder that exceed that reduced credit limit.

Tenn. Code Ann. § 47-28-105(d). A conspicuous notice concerning an open-end mortgage and the borrower's right, as displayed on the Executed Deed of Trust, is required to be on an open-end mortgage document pursuant to Tennessee Code Annotated § 47-28-104(a) (2013) (providing requirements for an open-end mortgage "to have the priority provided in § 47-28-103").

We conclude that the Bank made a material, unilateral mistake when it omitted the open-end mortgage indication from the Recorded Deed of Trust and did so without any notice to the Masheks that the deed had been altered. We therefore determine that as to the open-end mortgage, the Bank could not prove the essential reformation element of mutual mistake or fraud at the time of the agreement's execution. *See Sikora*, 212 S.W.3d at 288 ("To reform a contract based on mistake, a plaintiff must establish that the contract was executed under mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation." (quoting 27 WILLISTON ON CONTRACTS § 70:93, at 495)); *see, e.g.*, *Hitchcock Metal Sources, Inc. v. Mulford*, No. E2003-00738-COA-R3-CV, 2004 WL 178390, at *6 (Tenn. Ct. App. Jan. 29, 2004) (affirming the trial court's denial of the plaintiff's request to reform the parties' contract upon concluding that "the essential element" of mutual mistake had not been met). Furthermore, inasmuch as the Bank has essentially requested a two-part reformation, first of the mutual mistakes and then of its unilateral mistake compounded on the mutual mistakes, we determine that under the totality of the facts in this case, a piecemeal reformation is not warranted. We reverse the trial court's grant of partial summary judgment to the Bank on this issue and declare both the Executed Deed of Trust and the Recorded Deed of Trust to be unenforceable.

## B. The Note

The Masheks contend that the trial court erred in granting partial summary judgment to the Bank by awarding a monetary judgment against Mr. Mashek in the amount of $294,566.39 for the unpaid principal and interest owed on his line of credit pursuant to the Note. Having determined that the Executed Deed of Trust may not be reformed and is unenforceable, and that in turn the Recorded Deed of Trust may not be reformed and is unenforceable, we emphasize that the Note remains an enforceable, albeit unsecured, negotiable instrument. *See Mortg. Elec. Registration Sys.*, 488 S.W.3d at 267; *W.C. Early Co. v. Williams*, 186 S.W. 102, 103-04 (Tenn. 1916) ("The policy of the law is to treat the note as the principal thing and the mortgage as the incident . . . ."). Upon review, we conclude that the trial court did not err in granting partial summary judgment to the Bank by awarding the monetary judgment on Mr. Mashek's line of credit pursuant to the Note.

In its October 2017 order on the Bank's motion to alter or amend, the trial court stated the following regarding this monetary judgment:

> The Court's Memorandum Opinion and Order, entered on July 13, 2017 ("the Order") does not address the portion of [the Bank's] motion for partial summary judgment regarding its claimed entitlement to a judgment against [Mr.] Mashek, exclusive of attorney's fees. In this respect, [the

Bank's] motion for partial summary judgment was supported in part by the affidavit of Shelly Spurgeon, a Senior Vice President of [the Bank], which states that the principal balance owed by [Mr.] Mashek on his line of credit is $244,379.70; that the unpaid interest as of June 2, 2017, was in the amount of $47,143.40; and that interest would accrue from and after June 2, 2017, in the per diem amount of $26.46342. In their papers filed in opposition to [the Bank's] motion for partial summary judgment, [the Masheks] neither admitted nor denied the statements in Shelly Spurgeon's affidavit, saying only that "Defendants only agree that the figure is on the Affidavit of Shelly Spurgeon." Since [the Masheks] filed nothing to create a genuine issue of material fact regarding the amount owed by [Mr.] Mashek to [the Bank] on his line of credit, pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, judgment shall issue in favor of [the Bank] against [Mr.] Mashek for the amount he owes [the Bank] on his line of credit, which is exclusive of attorney's fees. Accordingly the Order is amended to provide as follows:

IT IS HEREBY ORDERED that [the Bank] is hereby granted, and shall have and recover a judgment against [Mr.] Mashek in the amount of Two Hundred Ninety Four Thousand, Five Hundred Sixty-Six and 39/100 Dollars ($294,566.39), representing the principal balance and the accrued interest owed by [Mr.] Mashek on his line of credit with [the Bank] through September 25, 2017.

The Masheks assert that the trial court should not have accepted the figures presented by the Bank because those figures were "based on [a] faulty affidavit of hearsay without the right to cross-examine." We disagree.

We note that "admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion." *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984). Regarding affidavits presented in support of a motion for summary judgment, Tennessee Rule of Civil Procedure 56.06 requires in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Tennessee Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." Pursuant to Tennessee Rule of Evidence 802, "[h]earsay is not admissible except as provided by these rules or otherwise by law." *See Godbee v. Dimick*, 213 S.W.3d 865, 894 (Tenn. Ct. App. 2006).

Tennessee Rule of Evidence 803(6) provides as an exception to the hearsay rule:

> **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

Upon examination, we find Ms. Spurgeon's affidavit to have met the Rule 803(6) requirements for a record of the Bank's regularly conducted activity. The Masheks argue that Ms. Spurgeon could not have possessed personal knowledge of their line of credit because Mr. Mashek had not personally dealt with her through the course of the parties' transaction. However, Ms. Spurgeon established in her affidavit that through her role as "a Senior Vice President and the Special Assets and Credit Analyst Manager" for the Bank, she had been "the primary [Bank] officer involved in efforts to collect the debt which [Mr. Mashek] owes to [the Bank]." Ms. Spurgeon also attached to her affidavit a detailed loan history with each transaction cataloged, whether advance, payment, or finance charge, during the time frame spanning December 15, 2003, through May 22, 2017.

For their part, the Masheks have not presented any evidence refuting the loan history, and Mr. Mashek has not denied receiving the principal advances from the Bank. The Masheks insist that they were prejudiced because they were unable to depose Ms. Spurgeon due to timing conflicts during the discovery process and the trial court's subsequent denial of the Masheks' post-judgment motion to depose Ms. Spurgeon, which they filed pursuant to Tennessee Rule of Civil Procedure 27.02. We find no abuse of discretion in the trial court's denial of the Masheks' Rule 27.02 motion, which allows for a trial court in its discretion and if it "finds that the perpetuation of the testimony is proper to avoid a failure or delay of justice," to grant a motion for deposition testimony to

be taken pending an appeal "for use in the event of future proceedings in the trial court." (Emphasis added.) The instant situation was not appropriate for Rule 27.02 relief.

Moreover, the Masheks have presented no evidence to contradict the specific principal and interest owed, as detailed in the loan history presented by the Bank, and they have not indicated how their cross-examination of Ms. Spurgeon would yield any such evidence. *See Rye*, 477 S.W.3d at 265 ("The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party."). The trial court did not err in granting partial summary judgment in favor of the Bank by awarding a judgment against Mr. Mashek in the amount of $294,566.39 for the unpaid principal and interest owed on his line of credit pursuant to the Note. We clarify that the Note will retain its original execution date of December 15, 2003.

### C. Attorney's Fees and Expenses

Upon the Bank's motion for attorney's fees and legal expenses, requested pursuant to a provision in the Note, the trial court granted the motion only as to attorney's fees and expenses incurred during what "would be expected in an ordinary foreclosure action," awarding to the Bank $6,226.00 in attorney's fees and $2,569.84 in expenses, for a total award of $8,795.84. On appeal, the Masheks contend that the trial court erred by awarding any attorney's fees or expenses to the Bank. They argue that the Bank's alterations to the Executed Deed of Trust and Rescission Notice should bar the Bank from recovery.

The Bank raises its own issue, contending that the trial court erred by denying its request for the balance of the 84,230.25 in attorney's fees and $7,135.34 in legal expenses the Bank had originally requested. The Bank requested these fees and expenses as those incurred during the entire litigation, comprising a total request of $91,365.59, or $82,569.75 above what the trial court awarded. We conclude that the trial court did not abuse its discretion in declining to award attorney's fees and expenses to the Bank for litigation that the court found to be caused by the Bank's or its agent's mistakes in drafting and subsequent unilateral alterations to the loan documents. Moreover, having determined that the Bank is precluded from enforcing the Executed Deed of Trust and the Recorded Deed of Trust, we further determine that the Bank is entitled solely to those attorney's fees and expenses related to seeking a judgment based on the Note.

In considering claims for attorney's fees, Tennessee courts adhere to the "American Rule." *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (explaining that "[u]nder the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a

right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case.").  In this action, the trial court had the authority to grant attorney's fees to the Bank based on the following provision in the Note:

> You [the borrower] agree to pay at our costs, including reasonable attorney's fees, what we incur in legal proceedings to collect or enforce the debt should you be in default.

In granting attorney's fees relevant to the collection of the debt on the Note and foreclosure action, the trial court specifically found that the fees and expenses requested by the Bank were reasonable.  The Masheks have not specifically contested the reasonableness of the attorney's fees, and the record indicates that the Bank provided a detailed accounting of the attorney's fees and expenses.

Inasmuch as we have concluded that the Note remains enforceable, we accordingly conclude that the trial court did not abuse its discretion by finding that the Bank was entitled to reasonable attorney's fees and expenses related to collection of Mr. Mashek's debt owed on the Note apart from the reformation action.  However, having also determined that the Executed Deed of Trust and the Recorded Deed of Trust are unenforceable due to the actions of the Bank or its agent(s), we vacate the portion of the attorney's fees and expenses that the Bank incurred in attempting to enforce the Executed Deed of Trust and the Recorded Deed of Trust.  We remand to the trial court for an evidentiary hearing as necessary and determination of the amount of reasonable attorney's fees and expenses incurred by the Bank solely related to the enforcement of the Note apart from this reformation action.

## VI.  The Masheks' Remaining Issues

The Masheks also assert that the trial court erred by failing to dismiss the Bank's complaint *sua sponte* and by dismissing the Masheks' counterclaims.  In support of their assertion that the trial court should have dismissed the complaint *sua sponte*, the Masheks rely on criminal forgery statutes and the doctrine of unclean hands, both of which the Masheks had raised as "counterclaims" before the trial court, to argue that the Bank "committed . . . a fraud upon this court."  The criminal statutes are inapplicable to this civil action.  Additionally, the doctrine of unclean hands is an affirmative defense that must be proven by the defendant, not a reason for *sua sponte* dismissal.  *See In re Estate of Boote*, 265 S.W.3d 402, 418 (Tenn. Ct. App. 2007).

The Masheks have also asserted as one of their "counterclaims" the affirmative defense of equitable estoppel.  We recognize that "[w]hen a party has mistakenly

designated a defense as a counterclaim . . . the court, if justice so requires, shall treat the pleading as if there had been a proper designation." Tenn. R. Civ. P. 8.03. However, having previously determined that the Bank cannot meet an essential element required for reformation, we accordingly determine that any further consideration of the affirmative defenses of equitable estoppel and unclean hands is pretermitted as moot. We note that we have addressed the Masheks' asserted defense of statutory estoppel in a previous section of this opinion.

The Masheks' remaining counterclaims include breach of fiduciary duty, negligence, slander of title, and wrongful foreclosure. In the argument section devoted to their counterclaims in their principal brief, the Masheks reassert factual allegations but provide no legal authority for the theories upon which these claims may be based. Tennessee Rule of Appellate Procedure 27(a)(7) provides that an appellant's brief must contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]" As our Supreme Court has explained, "[a]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). This Court has likewise elucidated that an issue may be considered waived when a party has failed to "cite authority for its arguments or to argue the issues in the body of its brief." *See Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011); *see also McGarity v. Jerrolds*, 429 S.W.3d 562, 566 n.1 (Tenn. Ct. App. 2013) ("The failure to cite authority to support an argument on appeal constitutes a waiver of the issue.").

According to our High Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). "[P]arties must thoroughly brief the issues they expect the appellate courts to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009). We therefore conclude that the Masheks have waived their issue concerning the trial court's dismissal of their remaining counterclaims. *See generally, Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) ("[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.").

## VII. The Bank's Motion to Alter or Amend Language in the Memorandum Opinion and Order

The Bank also argues that the trial court erred by denying the Bank's motion to amend certain language contained in the trial court's Memorandum Opinion and Order. In its motion to alter or amend, the Bank requested that the trial court amend the order by stating that "the alterations to the loan documents at issue were not fraudulent, forgeries or potentially criminal." In its supplemental motion, the Bank further requested that the trial court amend the order "to state that there was no malfeasance on the part of [the Bank]." In its October 2017 order, the trial court denied the Bank's motion in this regard without further comment.

In support of its position on this issue, the Bank cites to authorities that it otherwise asserts are inapplicable to this case to argue that the Bank's actions in circumventing proper procedural avenues for reformation do not rise to the level of fraudulent alterations of documents, *see First Tenn. Bank Nat'l Assoc. v. Wilson*, 713 S.W.2d 907 (Tenn. Ct. App. 1985), and that what the trial court termed the "forge[ry]" of the Masheks' initials on the Rescission Notice was not done with the intent required by the criminal statute defining forgery, *see* Tenn. Code Ann. § 39-14-114(a). Having previously determined that the Masheks failed to present any evidence to create a genuine issue of material fact concerning whether the Bank or its agent(s) intended to defraud the Masheks through the unauthorized use of the Masheks' initials, we agree that the requirements of criminal forgery cannot be found under the facts of this case. However, we also determine that the trial court described the initials as "forged" in the sense that the act of forgery, aside from the intent required, is defined in the criminal statute. *See* Tenn. Code Ann. § 39-14-114(b)(1)(A)(i) (defining "forge" in relevant part as to "[a]lter, make, complete, execute or authenticate any writing so that it purports to [b]e the act of another who did not authorize the act[.]").

We discern no abuse of discretion in the phrasing of the trial court's Memorandum Opinion and Order or in its denial of the Bank's motion to alter or amend the language therein. *See Robinson*, 153 S.W.3d at 38 ("We review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion." (quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003))). We do take the opportunity here to clarify that no evidence has been presented in this case to support a finding of the intent necessary for forgery as a cause of action against the Bank or its agent(s).

## VIII.  Conclusion

For the reasons stated above, we reverse the portion of the trial court's grant of partial summary judgment reforming the Executed Deed of Trust, as well as the trial court's declaration that the Executed Deed of Trust was enforceable as reformed.  We declare that neither the Executed Deed of Trust nor the Recorded Deed of Trust is enforceable as a matter of law, meaning that neither version may operate to secure Mr. Mashek's debt on the Note.  We vacate the trial court's award to the Bank of attorney's fees and expenses in the total amount of $8,795.84.  We affirm the trial court's judgment in all other respects, including the grant of partial summary judgment to the Bank awarding a monetary judgment against Mr. Mashek in the amount of $294,566.39 as the total amount of unpaid principal and interest due on the Note; the implied finding that the alteration to the date of the rescission notice confirmation was invalid; the dismissal of the Masheks' counterclaims; and the denial of the Bank's motion to alter or amend the language of the trial court's Memorandum Opinion and Order.  We clarify that no evidence has been presented in this case to support forgery as a cause of action against the Bank or its agent(s).  This case is remanded to the trial court for a hearing to determine the proper amount of reasonable attorney's fees and expenses incurred by the Bank solely to obtain a judgment in enforcing the Note, as well as for collection of costs assessed below.  Costs on appeal are taxed one-half to the appellant, Tennessee State Bank, and one-half to the appellees, Douglas V. Mashek and Deborah A. Mashek.

_____
THOMAS R. FRIERSON, II, JUDGE

45